**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
ANTHONY THOMPSON
*on behalf of himself and all others*
*similarly situated,*

                              Plaintiff,

                                                              **MEMORANDUM**
          - against -                                          **AND ORDER**

WORLD ALLIANCE FINANCIAL CORP                   CV 08-4951 (AKT)
*d/b/a* Senior Lending Network, a New York
Corporation, VERTICAL LEND INC.,
MORTGAGE WAREHOUSE, DAVID PESKIN,
and NICHOLAS HAHN,

                              Defendants.
-------------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.      PRELIMINARY STATEMENT**

        Plaintiff Anthony Thompson ("Thompson" or "Plaintiff") brings this action on behalf of

himself and others similarly situated, seeking unpaid minimum wage and overtime compensation

from Defendants World Alliance Financial Corp., Vertical Lend Inc., Mortgage Warehouse,

David Peskin and Nicolas Hahn (collectively, "Defendants"), pursuant to the Fair Labor

Standards Act of 1938, as amended ("FLSA"), 29 U.S.C. §§ 201 *et seq*., the New York Wage

and Hour Law, and the New York Labor Articles 6 and 19 and the New York Codes Rules and

Regulations §§ 138-2.1 *et seq.* ("New York Labor Articles").  The parties have consented to my

jurisdiction for all purposes in this case, including entry of judgment.

        Currently before the Court is Plaintiff Thompson's motion for (1) conditional

certification as an FLSA collective action pursuant to 29 U.S.C. § 216(b) ("Section 216(b)");

(2) Court authorization of a proposed notice to all individuals who are similarly situated in this

potential collective action; and (3) Defendants' production of a computer-readable data file containing the names, addresses, and telephone numbers of certain of Defendants' former and current employees (*i.e.*, potential opt-in members).  *See* DE 37, 38.  Also before the Court is Defendants' motion requesting that the Court appoint lead counsel for Plaintiffs [DE 55].  Also before the Court are Plaintiff Lauretti's motions for (1) an order to show cause [DE 58], and (2) to strike an attorney designation on certain opt-in forms.

For the reasons set forth below, Plaintiff Thompson's motion for (1) conditional certification under Section 216(b), (2) Court-authorized notice, and (3) Defendants' production of the requested data file is GRANTED.  The proposed notice is approved with the modifications set forth below.  Defendants' motion to appoint lead counsel is GRANTED.  Plaintiff Lauretti's motion for an order to show cause and motion to strike are deemed MOOT.

## II.   BACKGROUND

### A.   Alleged Facts[1]

Plaintiff Thompson was formerly employed as a loan officer by Defendants and worked at Defendants' office in Melville, New York.  Complaint ("Compl.") [DE 1], ¶ 5; Pl.'s Mem. [DE 37] at 2; Pl.'s Ex. C, ¶¶ 2, 3.  Defendants World Alliance, Vertical Lend and Mortgage Warehouse (collectively, "World Alliance")[2] provide mortgage banking services to consumers in New York State and in other states.  Compl., ¶ 7.  At all times relevant to the allegations set forth

---

[1]       The alleged facts are taken from the Complaint filed in the Thompson Action and the instant motion for conditional certification.

[2]       Plaintiff attests that World Alliance, Mortgage Warehouse and Vertical Lend "are all names of the same business."  Pl.'s Ex. C, ¶ 13.  Defendants have not submitted any objection to this statement, and so the Court accepts it as true and refers to World Alliance, Mortgage Warehouse and Vertical Lend collectively as "World Alliance."

in the Complaint, Defendant Peskin was an owner, President and director of World Alliance.  *Id.*, ¶ 15; Pl.'s Mem. at 2.  Similarly, Defendant Hahn was an owner and director of World Alliance at all times relevant to the allegations in the Complaint.  Compl., ¶ 17; Pl.'s Mem. at 3.  Both Peskin and Hahn exercised operational control as well as control over significant business functions of World Alliance; determined employee compensation; made hiring decisions; and acted on behalf of and in the interest of the company in devising, directing, implementing, and supervising the challenged wage and hour practices and policies relating to loan officers. Compl., ¶¶ 15, 17; Pl.'s Mem. at 2.

Plaintiff alleges that Peskin and Hahn managed the loan officers' employment, including the amount of overtime worked, and that Defendants dictated, controlled and ratified the wage and hour and all related employee compensation policies at World Alliance.  Compl., ¶¶ 15, 17, 26; Pl.'s Mem. at 2.  Specifically, Plaintiff maintains that "Defendants uniformly administered and enforced their sales policies to all loan officers through a training program, weekly meetings, supervision, and production goals and quotas."  Pl.'s Mem. at 3; Pl.'s Ex. C, ¶ 4; Ex. D, ¶¶ 4, 11; Ex. E, ¶¶ 4, 10.  Furthermore, according to Plaintiff, Defendants followed "uniform policies" with regard to the loan officers, including requiring loan officers to satisfy daily, weekly and monthly production goals and quotas and requiring them to work evenings, early mornings and weekends, for the purpose of selling more loans for Defendants.  Pl.'s Mem. at 3; Pl.'s Exs. C-E, ¶ 7.

In connection with World Alliance's alleged pay plan and common scheme, Plaintiff contends that pursuant to the company's uniform policies, all loan officers were paid commissions only -- *i.e.*, they did not receive a guaranteed salary (which, according to Plaintiff,

would have been at least $455 per week for a 40-hour work week), for at least a portion of the

class period.  Moreover, loan officers did not receive overtime pay for working in excess of 40

hours per week.  Pl.'s Mem. at 3-5; Pl.'s Exs. C-E, ¶¶ 6, 8, 9; Compl., ¶¶ 22-35.  Plaintiffs also

assert that "Defendants furthered their common scheme by failing to keep any records of the time

worked by their loan officers even though they were required to do so under the FLSA."  Pl.'s

Mem. at 4 (citing 29 C.F.R. § 516.2); Pl.'s Exs. C, E, ¶ 10; Ex. D., ¶ 12; *see also* Compl., ¶ 36

("During significant portions of the statutory period, neither the named Plaintiff nor the similarly

situated loan officers have been required to record their time worked, and Defendants failed to

maintain accurate time records as required by the FLSA and the New York Labor Articles.").

Regarding the jobs performed by loan officers at World Alliance, Plaintiff maintains that

all loan officers had the same job titles, compensation plans, job descriptions and job

requirements.  Compl., ¶¶ 22-25; Pl.'s Mem. at 3.  The loan officers' primary duty was "to sell

residential mortgage loans."  Compl., ¶ 23.  In particular, loan officers sold "home loans by

calling prospective customers from Defendants' office over the telephone, inputting their

information into the Mortgage Warehouse computer database and closing a deal."  Pl.'s Exs.

C-E, ¶ 5.

**B.      Procedural History**

Plaintiff Thompson commenced this action by filing a Complaint on December 9, 2008

[DE 1] (the "Thompson Action").[3]  I met with the parties in the Thompson Action for an Initial

Conference on March 26, 2009 [DE 26], and issued a Case Management and Scheduling Order

---

[3]      In the Complaint, Plaintiff named two other defendants, Kenneth Peskin and Larry
Reamer, both of whom Plaintiff subsequently agreed to drop following review of certain
documentation provided by Defendants.  *See* DE 28, 29.

4

[DE 25, 27] to govern the pretrial phase of the case.[4]  On the same date, the parties in the

Thompson Action filed their Consent to the Exercise of Jurisdiction by a United States

Magistrate Judge, which Judge Spatt signed on April 8, 2009, thereby bringing the Thompson

Action before me for all purposes.  *See* DE 32.  On June 10, 2009, Plaintiff Michael Lauretti

("Lauretti") commenced a similar action (the "Lauretti Action") on behalf of himself and others

similarly situated, against Defendant World Alliance Financial Corp., alleging substantively

identical factual allegations as in the Thompson Action.  World Alliance is represented by the

same counsel in both actions.  Plaintiff Thompson filed the instant motion for certification as a

collective action on August 7, 2009 [DE 37].

On September 18, 2009, I held a Status Conference with counsel for all parties in the

Thompson and Lauretti Actions, during which counsel for Plaintiff Lauretti agreed to

consolidation of the two cases.  *See* DE 52.  Counsel for Plaintiff Lauretti further stated he

understood that by agreeing to consolidation, the parties were also agreeing to my jurisdiction for

all purposes in both matters.  *Id*.  On the same date, the parties in the Lauretti Action filed their

Consent to the Exercise of Jurisdiction by a United States Magistrate Judge, which Judge Spatt

also signed on that date, thereby placing the Lauretti Action before me for all purposes.

*See Lauretti* Docket (2:09-cv-2471), DE 30.[5]

Also during the September 18, 2009 conference, the issue of a proposed notice of

---

[4]      The Court subsequently directed that all pretrial deadlines contained in the
Amended Case Management and Scheduling Order [DE 27] were to be held in abeyance pending
determination of the motion for approval of the proposed notice of pendency and conditional
certification.  *See* DE 54.

[5]      By Order dated October 26, 2009, and with the consent of all parties, the Lauretti
Action was consolidated into the Thompson Action.  *See* DE 53.

pendency arose and counsel for the respective Plaintiffs presented argument as to whether a single notice should issue and, if so, why their respective law firm should be the one which the opt-in forms are returned.  Counsel for Defendants asserted that a uniform notice of pendency should be issued but took no position as to which law firm should take the lead.  *See* DE 52. After hearing from the parties, I directed that counsel conduct a good faith meet and confer within two weeks to work out a solution to the issues related to the notice of pendency.  I further directed that if the parties could not work out such a resolution within that time frame, the parties would present their arguments to me concerning whether the notices should or should not be sent together and whether and to what extent the notices should be differentiated.  *Id*.

During a follow-up conference held on October 27, 2009, counsel informed me that although they reached an agreement on the general form of the proposed notice of pendency, they disagreed as to which counsel should appear on the proposed notice.  *See* DE 54.  Counsel for Defendants consented to the use of the *Thompson* Plaintiffs' proposed notice, but asserted that only one set of attorneys should appear on the notice (taking no position as to which set of attorneys that should be).  *Id.*  After hearing from counsel for all parties, I reserved decision on approval of the proposed notice of pendency, and set a deadline for the *Thompson* Plaintiffs to submit a letter regarding their qualifications and capacity to act as lead counsel, since counsel for the *Lauretti* Plaintiffs had already made that submission.  *Id.*  I further directed that all pretrial deadlines set forth in the Amended Case Management and Scheduling Order [DE 27] previously issued in the Thompson Action were held in abeyance pending issuance of the Court's decision on the motion for conditional certification of the class.  *Id.*

Currently before the Court is Plaintiff Thompson's motion for certification as a collective

6

action [DE 37].  Annexed as exhibits to the motion are:  (1) three former World Alliance loan officers' consent forms to join the collective action (Ex. A); (2) a printout of World Alliance's website dated August 7, 2009 (Ex. B); (3) the affidavit of named Plaintiff Anthony Thompson (Ex. C); the affidavits of two additional opt-in plaintiffs (Exs. D-E); (4) Defendants' answers to Plaintiff's first set of interrogatories (Ex. F); (5) Judge Bianco's decision in *Sexton v. Franklin First Financial, Ltd*., No. 08-CV-4950, 2009 WL 1706535 (E.D.N.Y. Jun. 16, 2009), granting a motion for conditional certification as an FLSA collective action under factual circumstances similar to the instant case, which Plaintiff asserts is "directly on-point authority" (Ex. G); and (6) Plaintiff's proposed Notice of Pendency (Ex. H).  Plaintiff Thompson later submitted a Supplement in Support of its Motion to Proceed as a Collective Action, which contained the declaration of a third opt-in plaintiff.  *See* DE 38, Ex. 1.

Defendants did not file any opposition to the certification motion and, in fact, informed the Court that they consented to conditional certification of the collective action.  *See* DE 52. Plaintiff's motion for conditional certification is therefore unopposed.  However, in light of the procedural context in which the motion is made and the impact the outcome will have on the way this case is conducted, the Court has nonetheless considered the merits of the motion.  In doing so, the Court has extensively considered the parties' submissions and the applicable case law.

**III.**   **DISCUSSION**

**A.**   **Conditional Certification**

**1.**   ***Legal Standard***

The FLSA provides, in pertinent part, as follows:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. . . . An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).  Section 216(b) provides an employee with a private right of action to recover overtime compensation and/or minimum wages.  *Id*. (cited in *Bifulco v. Mortgage Zone, Inc.*, 262 F.R.D. 209, 212 (E.D.N.Y. 2009) (citations omitted)).  "Although the FLSA does not contain a class certification requirement, such orders are often referred to in terms of 'certifying a class.'"  *Bifulco*, 262 F.R.D. at 212 (citations omitted).

Courts within the Second Circuit apply a two-step analysis to determine whether an action should be certified as an FLSA collective action.  First, the court determines whether the proposed class members are "similarly situated."  *Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 480 (E.D.N.Y. 2001).  If the court decides in the affirmative, then the proposed class members must consent in writing to be bound by the result of the suit, or "opt-in."  *Id*. (citing 29 U.S.C. § 216(b)) (additional citations omitted).  The second step, which typically occurs after the completion of discovery, requires the court to make factual findings whether the class members are "actually 'similarly situated.'"  *Bifulco*, 262 F.R.D. at 212.  "At that juncture, the court examines the evidentiary record to determine whether the 'opt-in' plaintiffs are, in fact, similarly situated to the named plaintiff."  *Id*. (citations omitted).

8

The instant decision concerns only the first step -- whether the proposed opt-in members are "similarly situated" such that conditional certification should be granted.  At this stage, "the evidentiary standard is lenient," *Rubery v. Buth-Na-Bodhaige, Inc.*, 569 F. Supp. 2d 334, 336 (W.D.N.Y. 2008), and plaintiff "need only make 'a modest factual showing to demonstrate that [she] and potential plaintiffs together were victims of a common policy or plan that violated the law.'" *Doucoure v. Matlyn Fodd, Inc*., 554 F. Supp. 2d 369, 372 (E.D.N.Y. 2008) (quoting *Hoffmann v. Sbarro*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)).  "In making this showing, 'nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan' is required." *Sexton v. Franklin First Fin., Ltd*., No. 08-CV-4950, 2009 WL 1706535, at *3 (E.D.N.Y. Jun. 16, 2009) (quoting *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005)). This determination is typically "based on the pleadings, affidavits and declarations[.]" *Sexton*, 2009 WL 1706535, at *3 (quoting *Hens v. ClientLogic Operating Corp.,* No. 05 Civ. 381S, 2006 WL 2795620, at *3 (W.D.N.Y. Sept. 26, 2006)); *see also Hallissey v. Am. On-line, Inc.,* No. 99 Civ. 3785, 2008 WL 465112, at *1 (S.D.N.Y. Feb. 19, 2008) ("Plaintiffs may satisfy this requirement by relying on their own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members.").  Significantly, the burden of proof here "is not a stringent one, and the Court need only reach a preliminary determination that potential class members are 'similarly situated.'" *Doucoure*, 554 F. Supp. 2d at 372.

In addition, courts have repeatedly stated that Section 216(b)'s "similarly situated" requirement is "considerably less stringent" than the requirements for class certification under Rule 23. *Rodolico*, 199 F.R.D. at 481 (citing cases).  "Under the FLSA, potential plaintiffs are

required to 'opt-in' 'to be bound by the judgment (and to benefit from it).'" *Sexton*, 2009 WL

1706535, at *4 (quoting *Hoffmann*, 982 F. Supp. at 260); *see also Rodolico*, 199 F.R.D. at 482;

*Doucoure*, 554 F. Supp. 2d at 372 ("That this burden is significantly less exacting than the

matters that must be demonstrated to sustain certification of a class under [Rule] 23 --

numerosity, commonality, typicality, and adequate representation -- makes sense.").

### 2.     *Application*

In the instant case, Plaintiff has alleged that he and the potential opt-in plaintiffs, who

also worked as loan officers at World Alliance, were subject to uniform policies of working more

than 40 hours per week without receiving overtime or minimum wage, in violation of the FLSA.

Specifically, Plaintiff alleges that pursuant to Defendants' compensation and human resource

policies, "which applied and were expected to be followed by all loan officers[,]" he and other

similarly situated loan officers were paid on a commission basis only, at least for a significant

portion of the class period.  According to Plaintiff and the opt-in plaintiffs, this meant that the

loan officers were "paid only if and when [they] sold a home loan.  If [they] did not sell a home

loan during a pay period, [they were] not paid anything, including minimum wage."  Pl.'s Exs. C-

E, ¶¶ 4, 6.  Plaintiff also alleges that he, the other opt-in plaintiffs, and the potential opt-in

plaintiffs had similar job duties, including the primary duty of selling home loans.  *Id.*, ¶ 4.

Among other things, Defendants did not record Plaintiff's time or the time worked by other loan

officers, and Defendants "did not have a time keeping system for its loan officers."  *Id.*, ¶ 11.

Plaintiff further avers that during the term of his employment at World Alliance, "Defendants did

not post any notice informing me and other employees of our rights to minimum wages and

overtime pay."  *Id.*, ¶ 12.

In his Affidavit (Pl.'s Ex. C), named Plaintiff Anthony Thompson attests that while employed by World Alliance, he "regularly worked in excess of 40 hours per week and often worked as many as sixty to seventy hours per week selling home loans[,]" and that he often "worked evenings and early mornings and weekends to answer leads generated by Defendants' marketing campaign."  Pl.'s Ex. C, ¶ 7.  Thompson further states that he worked with other loan officers whom he personally observed on a daily basis, who likewise "regularly worked in excess of 40 hours a week and were not paid overtime[,]" and were paid on a commission-only basis. *Id.*, ¶ 10.  The allegations set forth in the Complaint, the motion for certification and Plaintiff Thompson's affidavit are supported by the consent forms filed by three additional former loan officers who assert that they, too, were not paid minimum wage and did not receive overtime compensation, despite having worked in excess of 40 hours per week on at least one occasion. Pl.'s Ex. A.  These three former loan officers also submitted affidavits stating that (1) they regularly worked over 40 hours per week and often worked between 60 and 70 hours, and (2) they worked with between 30 and 80 other loan officers whom they observed on a daily basis, who were also paid on a commission-only basis, regularly worked more than 40 hours per week, and were not paid overtime.  *See* Exs. D-E, ¶¶ 7, 10; *see also* DE 38, Ex. 1, ¶¶ 6, 8.

Plaintiff Thompson and the opt-in plaintiffs assert that Defendants maintained the same compensation plan for all loan officers -- commission only -- which meant that loan officers were only paid if they made a sale.  Pl.'s Mem. at 3-4; Pl.'s Exs. C-E, ¶ 6.  According to Plaintiff, "by failing to pay its loan officers guaranteed compensation of at least $455 per week," Defendants cannot satisfy the salary basis test for treating the loan officers as exempt employees under the FLSA.  Pl.'s Mem. at 4 (citing 29 C.F.R. § 541, *et seq.*).  Plaintiff argues that the loan officers

11

were not exempt employees under the FLSA, yet Defendants did not pay them overtime compensation when they worked more than forty hours in a week.  *See* Pl.'s Exs. C-E, ¶ 8; DE 38, Ex. 1,  ¶ 7.  Further, Defendants did not pay the loan officers any guaranteed minimum wage for at least a portion of the class period.  Pl.'s Mem. at 4; Pl.'s Exs. C-E, ¶¶ 6, 9.

Based upon the pleadings and affidavits submitted by Plaintiff and the opt-in plaintiffs, the Court finds that Plaintiff has satisfied his minimal burden at the initial stage of this FLSA collective action inquiry.  Plaintiff has set forth a modest factual showing to demonstrate that loan officers at World Alliance were subject to a common policy of being denied minimum wage and overtime pay by Defendants.  *See Sexton*, 2009 WL 1706535, at *5 (quoting *Hens*, 2006 WL 2795620, at *3).  The Court therefore finds that Plaintiff has met the lenient evidentiary standard necessary to warrant the determination, at this early stage, that the proposed opt-in plaintiffs are "similarly situated."  *See Sexton*, 2009 WL 1706535, at *5.  In addition to Plaintiff's contentions, the Court's conclusion is further based upon the "substantial allegations" set forth by the potential opt-in plaintiffs regarding Defendants' failure to pay the loan officers minimum wage and overtime.  *Id.* (quoting *Scholtisek*, 229 F.R.D. at 387); *Bifulco*, 262 F.R.D. at 213-14; citing *Patton v. Thomson Corp.*, 364 F. Supp. 2d 263, 267 (E.D.N.Y. 2005); *Lynch v. United Servs. Auto Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) (burden of proof at the notice stage is "very low"); *Trinidad v. Breakaway Courier Sys.*, No. 05 Civ. 4116, 2007 WL 103073, at *2 (S.D.N.Y. Jan. 12, 2007) ("Plaintiffs need only provide some factual basis from which the court can determine if similarly situated plaintiffs exist.") (internal quotation marks and citations omitted).  In sum, Plaintiff has demonstrated a sufficient "factual nexus between [his] situation and the situation of other current and former" employees, who were potentially denied minimum

12

and overtime wages.  *See Sexton*, 2009 WL 1706535, at *9; *Bifulco*, 262 F.R.D. at 215.

Consequently, conditional certification of a collective action pursuant to Section 216(b) of the

FLSA is appropriate and Plaintiff's motion for conditional certification is GRANTED.

    **B.**    **Form Of Notice**

    Plaintiff also moves for an Order "authorizing notice by U.S. first class mail to all

similarly situated persons employed by Defendant as loan officers or other similarly titled

positions from December 8, 2006 to the present to inform them of their right to opt-in to this

lawsuit."  Pl.'s Notice of Motion [DE 37] at 1.  Plaintiff seeks Court authorization to disseminate

the proposed notice of pendency to putative collective action members, beginning three years

prior to the commencement of this lawsuit.  *See Sexton*, 2009 WL 1706535, at *9; *Bifulco*, 262

F.R.D. at 216.  In Plaintiff's estimation, "there are hundreds of additional similarly situated

current and former loan officers who worked for Defendants during the statutory period and

should be given notice and opportunity to opt-in to the lawsuit."  Pl.'s Mem. at 11; Pl.'s Exs. C-

E, ¶ 10.

    Counsel for Plaintiff Thompson submitted a proposed form of notice as an exhibit to their

memorandum of law in support of the motion to proceed as a collective action.  *See* Pl.'s

Ex. H.  Counsel for Plaintiff Lauretti in the new consolidated action consent to Thompson's

proposed notice, except for Paragraph IV, which designates Thompson's attorneys as counsel for

the conditional class and directs opt-in plaintiffs to return their consent forms to Erik Langeland,

P.C. (one of the firms representing Thompson in this action).  *See* DE 54.  With respect to

Paragraph IV, counsel for Plaintiff Lauretti assert that the notice of pendency should either

(1) contain their names as well as counsel for Thompson, or (2) a third-party administrator

should be used to receive the notices from the opt-in plaintiffs.  *See* DE 33, 54.  Counsel for

Defendants consent to use of the Thompson proposed notice, but maintain that only one set of

attorneys should appear on the notice (although they take no position as to which set of attorneys

that should be).  *See* DE 49, 54.  In all other respects as to the language content of the proposed

notice, the parties are in agreement.

Regarding the form of the notice in general, the time period beginning December 9, 2005

and running to the present is the appropriate time frame for opt-in plaintiffs because the FLSA

has a three-year statute of limitations period for willful violations, which Plaintiff alleges in this

case (Compl., ¶¶ 46, 47).  *See Bifulco*, 262 F.R.D. at 216 (citing 29 U.S.C. § 255(a)).[6]  It should

be noted that Defendants do not concede any willfulness in this regard.  Plaintiff filed the

Complaint on December 9, 2008.  Therefore, the three-year cut-off date for eligible claims by

employees is December 9, 2005.[7]  The Court further notes that because claims of the potential

opt-in plaintiffs are tolled on the date that their consent forms are filed, *see* 29 U.S.C. § 256(a),

December 9, 2005 is the earliest possible date that an opt-in plaintiff in this case may have been

---

[6]        "For an employer's actions to be willful, the employer must have 'either [known] or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]."  *Ramirez v. Rifkin*, 568 F. Supp. 2d 262, 268 (E.D.N.Y. 2008) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).  Courts within the Second Circuit generally leave the question of willfulness to the trier of fact.  *Ramirez*, 568 F. Supp. 2d at 268 (citations omitted).

[7]        Plaintiff asserts that the "FLSA statute of limitations is also extended where, as here, Defendants concealed Plaintiffs' rights by failing to post the required Department of Labor notice pursuant to the doctrine of equitable tolling."  Pl.'s Mem. at 13 (citing *Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 259 (S.D.N.Y. 2008) (employers' "failure to provide required notice of the governing legal requirements may be a sufficient basis for tolling") (citations omitted)).  However, counsel for Plaintiff has not taken the position that such equitable tolling would allow for claims from opt-in plaintiffs whose earliest date of employment was before December 9, 2005, and so the Court need not consider that issue here.

14

last employed by Defendants in order to have a timely claim under the FLSA.  *See Sexton*, 2009

WL 1706535, at *10; *Bifulco*, 262 F.R.D. at 216.  The proposed notice shall be modified to make

this point clear.

The issue as to which counsel shall appear on the proposed notice is directly related to the

Court's appointment of lead counsel in this case.  Accordingly, this issue will be addressed

below.  Otherwise, Thompson's proposed notice of pendency is approved with the modification

set forth here.

### C.       Production Of Contact Information For Potential Opt-Ins

Plaintiff also seeks an Order "requiring Defendants to produce a computer-readable data

file containing the names, addresses and telephone numbers of potential opt-in members so that

notice may be issued[.]"  DE 37 at 1.  Defendants have not stated any opposition to this part of

the motion.  Courts within the Second Circuit typically grant this type of request when granting a

motion for conditional certification of an FLSA collective action.  Therefore, the Court finds

Plaintiff's request to be appropriate within the context of this case.  *See Sexton*, 2009 WL

1706535, at *13; *Bifulco*, 262 F.R.D. at 216; citing *Hens*, 2006 WL 2795620, at *5 (the name,

last known mailing address, last known telephone number, work location, and dates of

employment are "essential to identifying and notifying potential 'opt-in' plaintiffs, and should be

disclosed"); *Sherrill*, 487 F. Supp. 2d at 350 ("I agree that such information is essential to

identifying prospective opt-in plaintiffs."); *Chowdhury*, 2007 WL 2873929, at *2 ("When a court

certifies a collective action, it may require an employer to disclose the names and addresses of

potential plaintiffs.").  Defendants have not made any argument suggesting that providing the

requested information would be "unduly burdensome or disruptive to [D]efendant's business

15

operations."  *See Sexton*, 2009 WL 1706535, at *13; *Bifulco*, 262 F.R.D. at 216 (quoting

*Hallissey*, 2008 WL 465112, at *3 ("In selecting the manner of issuing the notice, this court must

strike the appropriate balance in ensuring notification to the [opt-in plaintiffs] while minimizing

disturbance to [defendant's] business.")).  Accordingly, Defendants shall provide the requested

information to Plaintiff's counsel within 21 days of this Order.

**IV.    APPOINTMENT OF LEAD COUNSEL**

The law firms of Erik H. Langeland, P.C. and Stephan Zouras, LLP (together,

"Langeland"), counsel for Plaintiff Thompson, and Touhy, Touhy, Buehler & Williams, LLP

("Touhy"), counsel for Plaintiff Lauretti, each assert that their respective firms should be

appointed lead counsel in this case.  *See* DE 33, 50, 56, 57.  Defendants agree that lead counsel

should be appointed, and in fact have made their own motion to that effect, but take no position

as to which set of attorneys that should be.  *See* DE 54.

In determining a motion to appoint counsel for the putative class, the Court considers the

following factors:

> (1)   the work counsel has done in identifying or investigating
>         potential claims in the action;
>
> (2)   counsel's experience in handling class actions, other complex
>         litigation, and claims of the type asserted in the action;
>
> (3)   counsel's knowledge of the applicable law; and
>
> (4)   the resources counsel will commit to representing the class.

*See* Fed. R. Civ. P. 23(g) (cited in *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 375

16

(S.D.N.Y. 2007)).[8]  The court *may also* consider any "other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(C)(ii) (cited in *Iglesias-Mendoza*, 239 F.R.D. at 375 (citation omitted) (emphasis added)).  No single factor is dispositive.  *In re J.P. Morgan Chase Cash Balance Litig.*, 242 F.R.D. 265, 277 (S.D.N.Y. 2007) (citation omitted).  Although both Langeland (counsel for Thompson) and Touhy (counsel for Lauretti) appear to be qualified to serve as lead counsel, based upon the oral argument I have heard and the parties' written submissions, and for the reasons set forth below, the Court appoints Langeland to serve in this role.

Regarding the first factor, the work performed by counsel to identify or investigate potential claims in the action, counsel for Thompson initiated this action by filing a Complaint on December 9, 2008; participated in a Rule 26 conference with counsel for Defendants and exchanged Rule 26(a) disclosures [DE 19, 25-27]; drafted and served document demands and interrogatories; worked with Defendants' counsel to draft an agreement as to the method by

---

[8]     Rule 23(g) governs the appointment of counsel for a class that has been certified as a class action under Rule 23(c).  The instant case involves a putative class that is being conditionally certified pursuant to Section 216(b).  However, there is no controlling statute or case law setting forth the criteria for appointment of counsel under Section 216(b), and so the Court, in its discretion, turns to Rule 23(g) for guidance.  *See In re Comverse Tech., Inc. Deriv. Litig.*, No. 06-CV-1849, 2006 WL 3761986, at *2 & n.3 (E.D.N.Y. Sept. 22, 2006) (concluding that, because there was no controlling authority defining the factors to be considered in appointing lead counsel in a consolidated shareholder litigation, the criteria to be applied was left to the court's discretion, and the court applied the factors set forth in Rule 23(g)).  As the court in *In re Comverse Technology* noted, the Rule 23(g) factors "all focus on the capabilities of counsel to effectively litigate" the case.  *Id*. at *3.  *Cf. In re Air Cargo Shipping Servs. Antitrust Litig. M.D.L.*, 240 F.R.D. 56, 57 (E.D.N.Y. 2006) (appointing interim class counsel before class certification and noting that "[a]lthough neither the federal rules nor the advisory committee notes expressly so state, it appears to be generally accepted that the considerations set out in Rule 23(g)(1)(C), which governs appointment of class counsel once a class is certified, apply equally to the designation of interim class counsel before certification") (citations omitted).

which electronically stored information will be produced in this case [DE 30]; reviewed initial documentation produced by Defendants and, as result, agreed to voluntarily dismiss two individually named defendants [DE 28, 29]; worked with Defendants' counsel to resolve discovery disputes [DE 50, Ex. C]; filed the instant motion for conditional certification on August 7, 2009 [DE 37]; and obtained the consent of three opt-in plaintiffs in this case, as well as their affidavits.  *See* DE 50; *see also Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, (S.D.N.Y. 2004) (appointing counsel on the grounds that, *inter alia*, counsel has "conducted discovery to identify potential class members and, based on the evidence before the Court, has diligently prosecuted this action").  Moreover, Langeland asserts that "as a direct result of the efforts of counsel for the Thompson Plaintiffs," counsel for Defendants agreed to (1) conditional certification of the Thompson action; (2) the issuance of notice; (3) the production contact information for the putative class members; (4) the form of the notice; and (5) the form of the opt-in consent form.  *Id*.  These agreements are memorialized in the parties' submissions.  *See* DE 50, Ex. D; DE 54; DE 56.  Counsel for Thompson also retained a non-party administrator to facilitate the notice process.  *See* DE 50.

On the other hand, counsel for Lauretti initiated a separate action by filing a Complaint on June 10, 2009 (six months after the filing of the Complaint in the *Thompson* action).  Counsel for Lauretti has also served written discovery requests upon World Alliance, which requests, Touhy asserts, are "broader" than those served by counsel to "enable counsel to evaluate the impact of the violations regarding failure to pay compensation alleged in the Lauretti complaint on the benefit plans, programs and arrangements sponsored by defendant World Alliance. . . ."  *See* DE 33.  Approximately one month after filing the Complaint in the Lauretti action, counsel filed

18

a motion to certify as a collective action, which was in numbered paragraph form and which contained as exhibits the proposed notice and consent forms, but did not include an affidavit from Lauretti or other similarly situated loan officers.  In the motion, counsel for Lauretti stated that they would submit a memorandum of law with supporting affidavits to support the motion "[w]ithin the next few weeks."  *See* Lauretti Action, DE 9, ¶ 10.   The Court denied the motion as premature, but stated that the denial was without prejudice and with leave to renew, after Defendant filed an Answer and the Court held a Rule 16(f) conference.  *See* Lauretti Action, DE 10.  Plaintiff Lauretti did not renew the motion for conditional certification.

Based upon this analysis, the Court concludes that the first factor -- the work performed by counsel to identify or investigate potential claims in the action -- weighs in favor of Langeland.

In connection with the second and third factors -- counsel's experience in handling similar types of cases and counsel's knowledge of the applicable law -- counsel for both parties submitted their resumes and lists of representative class/collective action cases.  *See* DE 33, Ex. A (Touhy); DE 56, Ex. A-B (Langeland).  The Court has reviewed these submissions and the cases on which counsel have worked.  While counsel for both parties are experienced in handling class and/or collective actions, the Court finds that Langeland has substantial experience representing, prosecuting and settling the specific type of case at issue here, namely the prosecution of unpaid minium wage and overtime claims under the FLSA.[9]  *See Noble*, 224

---

[9]      Counsel for Thompson -- Erik Langeland and James Zouras -- each submitted a sworn declaration stating that their respective law practices concentrate "in representing plaintiffs through the United States in class and collective actions in wage and hour litigation."  *See* DE 56, Exs. D, E, ¶ 3.

F.R.D. at 346 (noting that "since the founding of his practice four years ago, [counsel] has been 'devoted primarily to representing employees in wage and hour class action litigation'"). Counsel for Thompson have represented or currently represent loan officers in several FLSA actions brought in the Eastern District of New York[10] and are well-versed in wage and hour law in FLSA actions.  *See Westerfield v. Washington Mut. Bank*, No. 06-CV-2817, 2009 U.S. Dist. LEXIS 54553, at *10-*11 and n.1 (E.D.N.Y. Jun. 26, 2009) (appointing plaintiffs' counsel as class counsel in FLSA action and discussing counsel's previous experience).  Accordingly, the second and third factors weigh in favor of appointing Langeland as lead counsel.

Regarding the fourth factor -- the resources counsel will commit to representing the class -- both sets of counsel assert that they are committed to prosecuting this action on behalf of the Plaintiffs and it appears to the Court that both counsel have the legal and financial resources necessary to represent the putative class.  *See Noble*, 224 F.R.D. at 346.  Touhy states that they "are committed to vigorously prosecuting this action and have demonstrated our commitment since filing the *Lauretti* case."  *See* DE 57.  Counsel for Thompson, Erik Langeland and James Zouras, each submitted a sworn declaration stating that their respective law firms "ha[ve] and will continue to commit all necessary resources to representing Plaintiffs, opt-in Plaintiffs and the class as a whole."  *See* DE 56, Exs. D, E, ¶ 4.  In light of the representations by all Plaintiffs' counsel here, the Court finds that the fourth and final factor is neutral in that both Langeland and Touhy seem well equipped to prosecute this action and are committed to doing so.

---

[10]      *See, e.g.*, *Cedeno v. Home Mortgage Desk Corp.*, 08 cv 1168 (E.D.N.Y.); *Daniels v. Premium Capital Funding, LLC*, 08 cv 4736 (E.D.N.Y.); *Sexton v. Franklin First Fin., Ltd.*, 08 cv 4950 (E.D.N.Y.); *Searson v. Concord Mortgage Corp.*, 07 cv 3909 (E.D.N.Y.); *Franco v. Ideal Mortgage Bankers*, 07 cv 3956 (E.D.N.Y.).

*See Westerfield*, 2009 U.S. Dist. LEXIS 54553, at *13 ("The work that [plaintiffs' counsel] have performed in both litigating and settling this case demonstrates their commitment to the class and to representing the class's interests.").

Taking all of the factors in their totality, I find that Langeland is in the optimum position to vigorously pursue the Plaintiffs' claims in this matter. That determination should not be construed in any way as an indication that Touhy is not in a position to pursue Plaintiffs' claims in an equally vigorous manner. Lead counsel, however, needs to be appointed and the Court appoints Langeland to the lead counsel role here to act on behalf of the putative class.

## V.  LAURETTI'S ORDER TO SHOW CAUSE

Counsel for Lauretti filed two substantially similar motions seeking orders directing that counsel for Thompson (1) remove an opt-in consent form from their website; (2) turn over all completed opt-in consent forms to counsel for Lauretti and to the Court; (3) strike the purported "attorney designation" contained on the website form; and (4) pay the costs and fees incurred in bringing its motion. *See* DE 58, 67. Counsel for Plaintiff Lauretti object to the opt-in forms on the law firm's website, which forms allegedly designate Plaintiff Thompson's counsel as lead counsel in the action, and assert that Thompson counsel have "disregard[ed]" this Court's October 27, 2009 Order [DE 54]. *See* DE 58 & Exs. B, C; DE 67. In opposition, counsel for Thompson assert that this Court has not issued any order prohibiting counsel form "signing up" clients and, in any event, counsel have neither engaged in any misleading communications with potential opt-in plaintiffs nor violated any Order issued in this case. *See* DE 59. Thompson counsel further contend that the posting on their website is part of their "duty to inform class members of the existence of the lawsuit [and to] convey information about the litigation[,]" and

21

constitutes a public communication about an FLSA case which is protected speech under the First Amendment.  *Id*. (citing cases).  The information on the website and the opt-in form itself (which is similar to the form used by  Lauretti) has remained the same, according to Thompson's counsel, since before the actions were joined and Lauretti counsel moved to become lead counsel.  Thompson's counsel adds that neither the website nor the opt-in form indicate that any firm has been appointed lead counsel in the case.  *Id*.

In light of this Court's decision appointing Langeland lead counsel for Plaintiffs in this case, the motions filed by Lauretti are hereby deemed moot.[11]

## VI.   CONCLUSION

For the reasons set forth above, Plaintiff's motion for (1) conditional certification as a collective action pursuant to Section 216(b) of the FLSA, (2) Court-authorized notice, and (3) production of contact information by Defendants for all potential opt-in plaintiffs is GRANTED. Counsel for Plaintiff Thompson, Erik H. Langeland, P.C. and Stephen Zouras, LLP are appointed lead counsel in this consolidated action.  Lauretti's motion by order to show cause and motion to strike are deemed MOOT.

The parties are directed (1) to meet and confer in a timely manner to revise the form of the proposed notice in compliance with this Order, and (2) to submit the final version of the

---

[11]     The Court notes that Lauretti's filing of the motion for an order to show cause [DE 58] as a letter motion was not in compliance with Rule 6.1(d) of the Local Rules of the Eastern District of New York, which provides that an order show cause to bring on a motion will not be granted "except upon a clear and specific showing by affidavit of good and sufficient reasons why a procedure other than by notice of motion is necessary, and stating whether a previously application for similar relief has been made."  Lauretti's motion by order to show cause did not contain an affidavit or any of the required information and is therefore procedurely defective.

documents to the Court within two weeks.  A Status Conference will be held by telephone on September 17, 2010 at 11:30 a.m. to discuss further scheduling.  Lead counsel for the Plaintiffs is directed to initiate the call to Chambers at (631) 712-5760 and to use an outside operator that all of the parties can be clearly heard.

**SO ORDERED**

Dated: Central Islip, New York
      August 20, 2010

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
United States Magistrate Judge